**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0493-22

IN RE APPLICATION OF A.J.J.
FOR A PERMIT TO CARRY A
HANDGUN PURSUANT TO
N.J.S.A. 2C:58-4.[1]

Submitted May 8, 2024 – Decided August 2, 2024

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. GP-0182-22.

Evan F. Nappen, Attorney at Law, PC, attorneys for appellant (Louis P. Nappen, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Petitioner appeals from the trial court's August 29, 2022 order denying his application for a permit to carry a handgun. Because the trial court failed to

---

[1] We use initials as the record discusses protected domestic violence documents. R. 1:38-3(d)(9) to (10).

comply with the process delineated under In re Application for Permit to Carry a Handgun of Carlstrom, 240 N.J. 563 (2020), we vacate the order and remand for a compliant hearing.

In July 2022, petitioner applied for a New Jersey permit to carry a handgun. His application stated he had not been adjudged delinquent, nor convicted of a disorderly or criminal offense; he had never had a Firearms Purchaser Identification card or permit for the carrying or purchasing of a handgun revoked or refused; and that he did not abuse alcohol or illegal substances or suffer from any physical defects or illnesses. Petitioner's application was endorsed by three individuals who each swore he was "a person of good moral character and behavior and who is capable of exercising self[-]control."

As part of his application, petitioner provided his "Permit to Purchase a Handgun & Form of Register," for the purchase of a handgun. He also provided a certification signed by a firearms instructor at a gun range, that stated petitioner had met "and exceed[ed] all of the requirements of the [National Rifle Association (NRA)] comprehensive pistol qualification course." The certificate indicated petitioner received a score of ninety-two in the course, which "consisted of [fifty] rounds of factory ammo fired in a timed fire sequence drill,"

2

"an in[-]depth lesson on the judicious use of deadly force," and "gun safety and proper gun handling."  Petitioner consented to the release of his mental health records to the Paterson Police Department as part of his application.  A search for records revealed petitioner did not have a record of admission, commitment, or treatment for any mental health issues.

On July 18, 2022, the Chief of Police of the Paterson Police Department approved petitioner's application for a permit to carry a handgun.

On August 29, 2022, petitioner appeared for a hearing before the trial court.  When counsel entered an appearance for petitioner, counsel told the court, "I happened to be on the sixth floor today, and they just assigned this to me."  The State was not present.

The court asked counsel if he had received a copy of the State's objection to the application.  Counsel replied he had not.  The State had not provided petitioner with a copy of the objection letter either.  Thereafter, the court provided counsel with the State's objection letter and paused the proceeding for seven minutes.

When the hearing resumed, petitioner's counsel told the court that petitioner had not received a traffic ticket since 2016, rather than in 2022 as indicated in the State's letter, and that petitioner had paid all of his outstanding

3

traffic tickets in 2022. The court asked the clerk for petitioner's driving abstract and proceeded to count the violations, arriving at the rough figure of 142. The court stated:

> You've got to be kidding me. I'm not giving you a permit. I'm not. That's, that's an outrageous, that shows a pattern of disregard for the law. This, I mean, I've never seen an abstract with 142 violations on it. It's incredible. You know, it shows that you don't have, have like, respect for the law. You keep violating it, even though you keep getting tickets. And then you don't pay them. You're not getting a permit. It's that simple, based on your driving abstract. Thank you.

The hearing lasted fifteen minutes including the seven-minute pause.

That same day, the court entered an order denying petitioner's application for a permit to carry a handgun. The court found that under N.J.S.A. 2C:58-3(c)(5), the issuance of a permit to petitioner "would not be in the interest of public safety or welfare." The order stated petitioner "ha[d] an extensive record of traffic violations, including approximately 140 traffic tickets," which the court found "raise[d] significant questions regarding [petitioner]'s ability to comply with society's rules and regulations." The order also stated petitioner's record included six dismissed temporary restraining orders (TROs), which the court found "raise[d] serious concerns regarding [petitioner]'s ability to safely handle and use a handgun, which is required by N.J.A.C. 13:54-2.4(b)."

4

On appeal, petitioner raises the following points for our consideration:

POINT 1
THE COURT BELOW ERRED BY DENYING PETITIONER HIS DUE PROCESS RIGHTS PER THE NEW JERSEY SUPREME COURT'S DECISION IN CARLSTROM, AND ATTORNEY GENERAL DIRECTIVE #06-19.

POINT 2
THE COURT BELOW ERRED BECAUSE NO FACTS WERE PRESENTED BELOW SHOWING THAT PETITIONER IS CURRENTLY A THREAT "TO THE PUBLIC HEALTH, SAFETY OR WELFARE" OR THAT PETITIONER LACKS "CHARACTER OF TEMPERAMENT" PER N.J.S.A. 2C:58- 3[(c)](5).

POINT 3
THE COURT BELOW ERRED BECAUSE PETITIONER MET HIS OBLIGATION UNDER N.J.A.C. 13:54-2.4[(b)] SHOWING "FAMILIARITY WITH THE SAFE HANDLING AND USE OF HANDGUNS."

POINT 4
PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

POINT 5
PER [NEW YORK STATE RIFLE & PISTOL ASS'N v. BRUEN, 597 U.S. 1 (2022)], GOVERNMENT MUST DEMONSTRATE THAT THE REGULATION(S) AT ISSUE DEPRIVING PETITIONER OF HIS SECOND AMENDMENT RIGHTS ARE CONSISTENT WITH THIS NATION'S HISTORICAL TRADITION OF FIREARM REGULATION.

POINT 6
IT IS RESPECTFULLY REQUESTED THAT ANY
OPINION REFERENCE PETITIONER BY HIS
INITIALS.

"[A] judicial declaration that a defendant poses a threat to the public health, safety[,] or welfare involves, by necessity, a fact-sensitive analysis." In re Application of the State for the Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505 (2016) (quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)). In our review of a judicial determination following an evidentiary hearing, we "should accept a trial court's findings of fact that are supported by substantial credible evidence" in the record. Id. at 505-06 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)). We will decline to "disturb the factual findings . . . of the trial judge unless . . . convinced . . . they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (internal quotation marks omitted).

Notwithstanding our deference to its fact findings, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty,

6

L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). For that reason, "[q]uestions of law receive de novo review." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). We apply these standards here.

When petitioner applied for a public-carry permit in July 2022, and through entry of the Law Division's August 29, 2022 order denying his application, N.J.S.A. 2C:58-4 required that carry permits be approved by the Superior Court. Under the then-extant version of N.J.S.A. 2C:58-4(d) (2018), an applicant for a permit to carry a handgun was required to "first apply 'to the chief police officer of the municipality in which the applicant resides, or to the superintendent'" of the New Jersey State Police. Carlstrom, 240 N.J. at 569 (quoting N.J.S.A. 2C: 58-4(c) (2018)). Where, as here, a chief of police of a municipality approved the application, the statute required the applicant to "forthwith present [the approved application] to the Superior Court." Ibid. (quoting N.J.S.A. 2C:58-4(d) (2018)). It was then incumbent on the court to "issue the permit . . . if, but only if, it [was] satisfied that the applicant [was] a person of good character who [was] not subject to any of the

disabilities set forth in" N.J.S.A. 2C:58-3(c), and the applicant otherwise satisfied the statutorily prescribed standards. N.J.S.A. 2C:58-4(d) (2018).[2]

In Carlstrom, the Court explained the procedural requirements for hearings before the Law Division following an approval of a permit to carry a handgun by the chief police officer of a municipality or the superintendent of the New Jersey State Police under N.J.S.A. 2C:58-4(c). 240 N.J. at 571-73. The Court noted that Administrative Directive #06-19, Criminal—Procedures for Processing Gun Permits (May 20, 2019) (the 2019 Directive), issued by the Administrative Office of the Courts, established the procedure for the processing of applications for permits to carry a handgun. Carlstrom, 240 N.J. at 567.

The Court observed the 2019 Directive required a trial court to hold a hearing if it "has any questions regarding the applicant or" the pending

_____

[2] The Legislature amended N.J.S.A. 2C:58-4 after petitioner's application was denied. L. 2022, c. 131, § 3. Among other changes, the amendment removed the second step, and a petitioner is no longer required to obtain the court's approval after a municipality's police chief or the State Police superintendent approves an application. Admin. Off. of the Cts., Admin. Directive #14-22: Criminal—Gun Permit Procedures 1-2 (Dec. 22, 2022). This court has determined that the amendments only apply to permit applications submitted on or after the December 22, 2022 effective date. In re Appeal of the Denial of M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 194-96 (App. Div. 2023).

application.  Id. at 567-68 (emphasis omitted) (quoting Admin. Directive #06-19, at 3).

The Court further interpreted the 2019 Directive to mandate a hearing "whenever the court contemplate[d] denying a handgun carry-permit that has been approved by the police chief or superintendent." Id. at 572 (emphasis in original).  The Court explained that in accordance with the 2019 "Directive, the Law Division judge shall issue a notice scheduling a hearing with an accompanying statement of reasons for its intent to deny the application," and, "[a]t the hearing, the applicant should be afforded the opportunity to proffer reasons why [the applicant] satisfies the standard and respond to any questions from the judge." Ibid.

The State does not dispute the court did not provide petitioner with notice of the reasons the court intended to rely on to deny his application.  Therefore, petitioner was unprepared to address the court's concerns and to present evidence in support of his application.  In the eight-minute hearing, the court did not give petitioner any opportunity to be heard or "to proffer reasons why he satisfie[d] the [statutory] standard." Ibid.

The court referred to documents that petitioner did not have and relied on those documents to deny the application.  Although counsel was present, he

A-0493-22

advised the court he had just been assigned to the case because he was in the building at the time. Counsel did not have the State's objection letter nor any of the documents the court was reviewing during the hearing and on which the court relied.

We disagree with the State's contention that petitioner was accorded due process because the court paused the hearing so counsel and petitioner could review the letter. That did not cure the lack of opportunity for petitioner to prepare for the court's questioning on the particular objections and review any documents or provide documents on his own behalf.

The court did not comply with the 2019 Directive and the Carlstrom procedure. That failure provides a sufficient basis to vacate the court's order denying petitioner's application and remand the matter to the trial court. On remand, the court shall comply with the notice and hearing requirements imposed in Carlstrom. In light of our conclusion, we need not address petitioner's remaining arguments.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0493-22